United States District Court
For the District of Columbia


Mr. Glenn Giardino
3508 Sugar Maple Court
Waldorf Maryland 20602

    And

Mr. Alexander Shepard
5021 Seminary Road #302
Alexandria Va. 22311


    V.                               Civil Action No.  _____


The District of Columbia
A municipal Corporation

    Serve: The Office of the Mayor of the District of Columbia
        Washington, D.C.

Mr. Charles H. Ramsey,
Chief of Police
Metropolitan Police Department
300 Indiana Avenue NW
Washington, D.C. 20001


    And

Lt. Jeffery N. Parker
Metropolitan Police Department
300 Indiana Avenue NW
Washington, D.C. 20001

    And

1

Sgt. Mary , Lanauze
Metropolitan Police Department
300 Indiana Avenue NW
Washington, D.C. 20001

    And

Sgt.Thomas Boone
Metropolitan Police Department
300 Indiana Avenue NW
Washington, D.C.  20001

    And

Assistant Chief Michael Fitzgerald
Executive Assistant Chief of Police
Metropolitan Police Department
300 Indiana Avenue NW
Washington, D.C. 20001
.
    And

Assistant Chief. Winston Robinson
Asst. Chief of Police-Special Service Command
Metropolitan Police Department
300 Indiana Avenue NW
Washington, D.C. 20001

    And

Commander Michael Anzallo
Metropolitan Police Department
300 Indiana Avenue NW
Washington, D.C. 20001


    And

Captain Mario Patrizio
Metropolitan Police Department
300 Indiana Avenue NW
Washington, D.C. 20001

    And

Detective Leon Epps
Metropolitan Police Department
300 Indiana Avenue NW
Washington, D.C. 20001

    Defendants

    And

Captain William Manning(Retired)
Metropolitan Police Department
300 Indiana Avenue NW
Washington, D.C. 20001

## COMPLAINT

Count One

(Employment Discrimination)

The plaintiffs allege against the defendants as follows;

At all times herein the plaintiffs are members of the Metropolitan D.C. police Department. The Defendant District of Columbia is a Municipal corporation. The individual police officers and the chief of police are sued in their individual capacity. The Jurisdiction of the Court is invoked in accordance with Title VII of the Civil Rights Act of 1964 as amended, the Human Rights Law of the District of Columbia, The American With Disabilities Act, The Rehabilitation Act, the ADEA and the Civil Rights Act .42 US Code 1983. and 42 U.S. C. 1985(2) The plaintiff's also allege that they have been retaliated against in the scope of their employment by the defendants for engaging in protected activities. The events that form the basis of the complaint took place within the District of Columbia and venue is appropriate in this

Court

## PART I

The plaintiff Shepard alleges against the defendants as follows;

1) On April 4,2005,the plaintiff filed a complaint against the defendant Lt. Jeffery N. Parker for age discrimination. Defendant Parker engaged in acts of prohibited age discrimination by accusing the plaintiff of failing to appear before the United States Grand Jury for the District of Columbia. The plaintiff had been excused from the appearance which was in reality a witness conference. The plaintiff Shepard had been on sick leave at the time with a pulled muscle in his shoulder. Similarly situated individuals in the detectives office did not receive this type of treatment and scrutiny. The aims of these acts were to empty out persons who were senior personnel in the office of defendant Parker and Sgt. Lanauze. This is evidenced by the fact that other senior personnel were transferred for no apparent reason. The EEOC notified defendant Parker that complaints were filed against him and he immediately engaged in retaliatory conduct by changing the days off of the plaintiffs Shepard and Giardino.No reasons were given for the change. Similarly situated detectives in the MPDC were not retaliated against in the same manner as the plaintiffs. Prior to the notification of the charges by the EEOC ,the defendant Parker had not changed any days off of the detectives under his supervision. Moreover, Defendant Parker retaliated against plaintiff Shepard by illegally altering the leave book which had authorized vacation leave to Shepard. This was ultimately corrected by senior supervisory officers within the MPDC but the acts of Parker were retaliatory in design. The plaintiff Shepard was also retaliated against by Parker and Lanzaue by illegally and intentionally having subpoenaed him to court for legal matters knowing that he was on sick leave for injuries on his right foot. The defendants

Parker and Lanauze knew that he had limited ability but nevertheless had the subpoena served on him at his residence. Only the intervention of the office of the United States Attorney caused the matter to be resolved without the appearance of the plaintiff Shepard .In addition, the defendants Parker and Lanzaue engaged in retaliatory action which led to an adverse employment action against Shepard by providing him with an evaluation of "below standard." The evaluation was erroneous as the plaintiff Shepard had been out on sick leave for seven months and given desk work and limited duty. Moreover the defendants failed to provide reasonable work accommodations to the plaintiff Shepard and penalized him for his disability in violation of the several rehabilitation acts and the Human Rights Law of the District of Columbia.Moreover, Parker and Lanauze did not work the same shift as the plaintiff Shepard so they were not in the position to evaluate him properly. Similarly situated detectives did not receive this treatment that was accorded to the plaintiff Shepard. As a further act of retaliation. , when the plaintiff returned to work, he conducted an inventory of his work area and discovered that his MPDC radio, name plate and other items were missing. He notified defendant Thomas Boone and a stolen property report was taken. All property was returned except for the overhead lock key and a personal photo. Defendant Boone was asked when an investigation would begin as to the theft but the plaintiff did not receive a reply. Defendant Parker did not do anything to assist the plaintiff. Similarly situated members of the MPDC were not treated in this manner. The final acts of retaliation occurred during the Week of January 20,2006.The internal affairs division has passed to defendant Boone a list of instructions for all members to access the MPD PPMS which allows all sworn and civilian members to look up their personnel records without having to travel to headquarters to review the same. Defendant Boone refused to give him the instruction sheet and

was belligerent when the information was requested and refused to turn the document to him. Similarly situated detectives were not treated in this manner. In January 2005,the Metropolitan Police departments issued a memorandum for all detectives to receive mandatory training which is required by the Department of Justice.Lt. Parker did not allow detective Shepard to attend, thus depriving him of professional and economic advancements.

## PART II

The plaintiff Giardino alleges against the defendants as follows;

1) The plaintiff Giardino commenced his assignment to the third district detectives on June 24,2001. He received excellent reviews from his superiors for his work as a detective. In September 2004 the defendant Jeffrey N. Parker began as commander of the third district detectives and he commenced a pattern of employment discrimination based upon race and age that continues to this date. The plaintiff has been subjected to a hostile work environment based upon the conduct of defendant Parker.

2)  In July and September 2004 four members of the detective squad were transferred out of that district by Defendant Parker. These individuals were White and Latino detectives. Similarly situated individuals of a different race and age were not treated as the three detectives, Papay, Lopez, and Torres.

3) On October 20, 2004 the plaintiff Giardino was threatened with bodily harm for using the work station of an African-American male, Detective Epps. The defendant Parker was an ear witness to the threat but refused to conduct an investigation. Similarly situated persons of a

different race and age were not treated as the plaintiff Giardino.

4) On November 2,2004,the defendant Parker humiliated the plaintiff by singling him out in front of other detectives about using another's work station. He also insinuated that the plaintiff Giardino had stolen the passport of another detective. Similarly situated individuals were not treated as the plaintiff was treated. The plaintiff was not given a key to the door lock when one was installed about two weeks later.

5) On January 21,2005 the plaintiff was subjected to verbal abuse by the defendant Parker based upon allegations that Giardino had failed to conduct an investigative report. This was also done in front of The Sgt. Thomas Boone(Caucasian male). The defendant Parker, when asked if he was biased against Giardino, stated twice that Giardino sought to make him say something that he did not want to say. Similarly situated individuals of a different race and age were not treated in this manner.

6) On March 2,2005,the plaintiff requested five weeks of committed leave for an overseas family vacation to the defendant Parker. The plaintiff requested the approved leave letter from defendant Parker on numerous occasions without success. Another Caucasian male, Sgt. Greg Shamanek, the plaintiff's immediate supervisor at the time was unable to obtain the leave letter from defendant Parker or receive an explanation as to the delay. The plaintiff was not given approved leave until May 18,2005.Similarly situated individuals of a different race and ages were not treated as the plaintiff Giardino was.

7) On March 24,the defendant verbally abused the plaintiff and Sgt. Shamanek in front of a meeting of the detectives. Similarly situated individuals of a different race and age were not treated in this matter.

8) On April 4, 2005, Sgt. Shamanek was transferred to the seventh district detectives and then to the sixth district detectives. Similarly situated individuals of a different race and age were not treated in this manner.

9) After timely EEOC complaints against Parker were filed by the plaintiff Giardino and Shepard, their days off were changed from Sunday and Monday to Monday and Tuesday. This retaliatory conduct was based upon their engaging in protected activity, Similarly situated individuals of different races and ages were not treated in this manner.

10) On June 2, 2005 Sgt. Lanauze sought to sabotage the plaintiff's closure rate by withholding a closed case which had been prepared in full as of May 27, 2005 Sgt. Lanauze lied in her attempt to accomplish that task and the office of Superintendent of Detectives management was made aware of this and took corrective action. On June 7th 2005, Sgt. Lanauze issued a warning notice to the plaintiff Giardino with a below average performance evaluation. The defendant Lanauze gave him ten days to clear up sixty seven-old reports. Another detective had been given six weeks to clear up sixty-seven reports and catch up on his caseload. She also lied in front of Lt. Langford in regard to her prior communications with the plaintiff pertaining to alleged delinquent reports. Similarly situated people of a different race and age were not treated as he was treated.

11) On November 7, 2005 Sgt. Boone made an IAD complaint against patrol sergeant Michael Smith as well as Detectives Mcgee and the plaintiff Giardino for a decision that was made by Sgt. Smith concerning the classification of a police report. On January 6, 2006, Sgt. Smith received an official reprimand for the incident which was closed by Lt. Sledge who was the supervisor of Sgt. Smith. It is understood that the office of Superintendent of Detectives is still

investigating the plaintiff and Detective Mcgee for a decision that was made by a superior officer who was disciplined for the incident. Similarly situated individuals of a different race and age were not treated a detective Mcgee and the plaintiffs were treated.

13) On November 9th 2005, the plaintiff received an average annual performance evaluation from Sgt. Lanauze which was rife with negative comments. This was done even though the plaintiff Giardino had cleared up all delinquent reports as requested. Similarly situated individuals of a different race and age were not treated as the plaintiff Giardino was treated.

14) On December 6th, 2005, Lt.Parker inquired from several male detectives, including the plaintiff Giardino if they had received a call from one of the creditors of Sgt Lanauze. Lt.Parker indicated to the plaintiff Giardino that he was the target of the inquiry and investigation to ascertain who had taken the phone call. Similarly situated individuals of a different race and age were not treated as the plaintiff Giardino had been treated

15) On December 8, 2005, the plaintiff was transferred to the First District Detectives. A representative of the plaintiff was told by Captain Mario Patrizio, (Caucasian-Latino Male) that the decision was made by Assistant Chief Winston Robinson(African American male) with the concurrence of Commander of Michael Anzallo(Caucasian Male). Similarly situated individuals of a different race and age were not treated as the plaintiff Giardino was treated.

## COUNT II

### Violation of Civil Rights

The plaintiff's allege and incorporate by reference the allegations of count one of the

complaint and add the following;

1) At all times herein the defendants were acting in the scope of their employment and as agents for the defendant the District of Columbia. They were acting under the color of law as officers and members of the metropolitan police department in engaging in illegal activities to deprive the plaintiffs of due process of law and equal protection of the law as guaranteed by the fifth amendment to the constitution. They violated several statutes herein above listed designed to guarantee equal opportunity in the work place and equal access to facilities and programs of the metropolitan police department of the District of Columbia. They were subjected to a hostile work environment by the agents of the defendant government and were subjected to retaliatory conduct by virtue of their engaging in protected activity.

2) As the direct result of the illegal conduct as alleged the plaintiffs were injured. They were denied the benefits of their position as employees of the Metropolitan Police Department of the District of Columbia and were exposed and subjected to discriminatory treatment by the agents of the District of Columbia who were acting in the scope of their employment and on behalf of their employer. They suffered emotional distress, humiliation, anxiety and a deprivation of federally protected rights. At all times herein the conduct of the agents of the defendant District of Columbia who were acting in the scope of their employment was willful, reckless, intentional and deliberate and with disregard for the rights of the plaintiffs. They seek the following relief;

A) Compensatory damages as provided by Title VII of the Civil Rights Act of 1964, as amended, punitive damages against the individual defendants. Attorneys' fees, court costs removal of any and all derogatory information in their personnel files, a ban on retaliation and a

hostile work environment and any additional relief the Court deems appropriate. Trial by jury demanded on all issues.

_____
Sol Z. Rosen Esq. #10967
2501 Calvert Street NW #212
Washington, D.C. 20008
(202) 296-8485
Fax(202) 296-8375
