
flag of the
United States of America

# AFFIDAVIT OF TRUTH

CIVIL ACTION NO. 06-00489(esh)

Now, here comes calling, AFFIANT, who goes by the appellation, Alexander Karone Shepard, a living, flesh –and-blood man under the laws of GOD, being of sound mind, and over the age of twenty—one, whose advocate is JESUS, the CHRIST, reserving all rights, knowingly and willingly Declares and Duly affirms, in accordance with law, in good faith, with no intention of delaying, nor obstructing, and with full intent for preserving and promoting the public confidence in the integrity and impartiality of the judiciary, that the following statements and facts in the matter of the above listed case, and any manner relating to this, are of the AFFIANT's own firsthand knowledge, does solemly swear, declare and depose: that the AFFIANT is competent to state the matters set forth herein; that the AFFIANT has personal knowledge and belief of the facts herein: and all the facts stated herein are true, correct, complete and certain. This declaration of facts is based on AFFIANT own firsthand knowledge and belief: mark AFFIANT word:

### ACCEPTANCE OF OATH OF OFFICE:

For the record, Ellen Segal-Huvelle, d/b/a ELLEN SEGAL-HUVELLE, JUDGE, UNITED STATES DISTRICT COURT, WASHINGTON, DISTRICT OF COLUBMIA, I want to pay you the honor and respect that you deserve. Therefore, I, Alexander Karone Shepard, hereby duly accept your Oath of Office, being your open and binding offer of contract to form a firm and binding, private contract between you and me. I am proud that when you said, " so help me GOD", you promised, and are bound by your word, that you would perform all of your promises, including, but not limited to, your promise to uphold the Consitution for the Untied States of America, which includes protecting all of my unalienable rights defined by the Declaration of Independence and included in the Bill of Rights. I am proud that you have promised to protect all of my unalienable rights, and I trust you will be an honorable woman whose word is her bond, and that you will honor your private contract with me by keeping your promises, and not allow any third-party agents, acting without delegated or regulatory authority, to interfere in your duty to me.

### RESPONSE TO THE DISTRICT OF COLUMBIA ASSERTIONS AS REPRESENTED BY THE OFFICE OF THE ATTORNEY GENERAL OFICE:

1. The assertion by the OFFICE OF THE ATTORNEY GENERAL representing the DEFENDANTS that I filed an EEOC complaint on NOVEMBER 4,2005 is misleading and false representation by the

OAG. My EEOC complaint was filed in APRIL 2005. (See PAGE 6 of OAG motion).

2. In APRIL 2005, the AFFIANT filed an age discrimination charge with EEOC. Based upon my submission and stated facts, the facts were accepted and assigned a case number. In my submission, I stated under the penalty of perjury that the DEFENDANT PARKER who was the unit commander had engaged in the actions of requesting several statements from me as to why I did not make a court appearance. A court appearance to which I was excused from by my immediate supervisor. At the time of the pending court appearance to which I was not made aware of to later, my immediate supervisor had retain a release for me. An alledge investigation was launched by LT. PARKER for me missing a grand jury appearance. Upon care examination, this court appearance was for a witness conference. Further at the time of this event, I was on approve MPD sick leave and was incapacitated to even drive and this was know by my immediate supervisor as well as LT. PARKER. Medical documentation is readily available. Similar situated persons in the detective's office were not subject to this treatment and scrunity. This " selective investigative act" cause the AFFIANT to consider that there was a "contempt of the grand jury" investigation forthcoming and a defensive posture was necessary.

3. Immediately within a two week period of filing my EEOC complaint, LT. PARKER was notified of the complaint, he immediately began his retailtory acts by (1) changing the days off of myself and DET. GIRADINO as we both had filed an EEOC complaint. Myself and DET. GIRADINO had a long standing history of having SUNDAY's and MONDAY'S as our days off. LT. PARKER offer no reason for the change of days off for us, and did <u>NOT</u> change any senior detectives days off and as of this date, and prior to his transfer, did not change any one's days off to MONDAY and TUESDAY, specifically senior personnel as we were/are. The AFFIANT is willing to show as a matter of MPD policy thru the gathering of the schedules of MPD district detective personnel that senior personnel for the most part have SUNDAY's and MONDAY's off as their days off. This is a long standing policy of MPD. Under oath and under the penalty of perjury, the AFFIANT would ask to instruct LT. PARKER to explain his actions fully at that time. Similar situated person were treated differently.

4. Prior to the filing of the EEOC complaint, the AFFIANT had put in for committed leave which was pre-approved thru the chain of command. Airline tickets and hotel accomdations were paid for in advance. Upon receiving notification of an EEOC charge, the DEFENDANT PARKER made ink changes in an official document.

The undersigned has color copies of the original leave book and pre-approve leave slip, and color copies of the ink changes made by DEFENDANT PARKER. The AFFIANT took issue with the DEFENDANT's PARKER retailtory actions and utilize the chain of command and contact the DEFENDANT PARKER immediate supervisor, who readily after submission of the evidence, over rule DEFENDANT PARKER. This supervisor stated that this was view as retaliation by the DEFENDANT PARKER.

5. In MAY 2005, the AFFIANT underwent a series of surgeries for vascular disorder in his right foot. These operations were extremely dangerous and limited the AFFIANT mobility severely. The AFFIANT went to the MPD clinic and documentation from the AFFIANT doctors were given to the clinic as well as the management staff at the AFFIANT district. The management staff was completely aware of the AFFIANT medical condition and limited mobility after major surgery. In JULY 2005, DEFENDANT LANZAUE under the direction of DEFENDANT PARKER gave my home number to an AUSA in regards to coming to court. DEFENDANT LANZAUE was fully aware of my medical condition and limited liability and had in fact visit the AFFIANT prior, and saw for herself the limited liability condition of the AFFIANT. The AUSA advised it was the DEFENDANT LANZAUE who had given him my home number which is against MPD policy. Policy is that the official of that element will call the member to relay a message, and protect the member's privacy. The AUSA under the belief that I could in fact come to court, issued a subpoena for me to come to court. The AFFIANT contact the UNITED STATES ATTORNEY, KENNETH WEINSTEIN and furnish the same medical information that I had given to DEFENDANTS PARKER AND LANZAUE and MR. WEIINSTEIN quickly made sure that I did NOT come to court for he did not want the DEPARTMENT OF JUSTICE to assume the medical liability for me in the event of something going wrong. The DEFENDANT PARKER and LANZAUE cold and calleous concern for my welfare was out of their retailtory mindset, and similar situated detectives did not received this type of treatment.

6. In OCTOBER 2005, the DEFENDANT LANZAUE responded to the AFFIANT home address and served him with a PERFORMANCE EVALUATION covering the period of OCT 2004-OCT 2005. In this performance evaluation, the AFFIANT received for the first time in his career a <u>below standard evaluation.</u> This was/is a clear retailtory act by the DEFENDANT PARKER and LANZAUE. It was unfair due to the AFFIANT being out on sick leave and limited duty from the periods of NOV 2005- febuary 2006 and from the period of MAY 2005-the end of the rating period in OCTOBER, the undersigned was out of sick leave for vascular surgery. The MPD has no written

policy on how one should be rated, if rated at all, while one is on sick leave and/ or limited duty. In a limited duty status the AFFIANT could not interact with the general public, and was given office/desk work to do and completed such to full satisfaction. There was no pre warning(s) as required by the MPD own rules, regulations, and guidelines that the AFFIANT work was in way below par, and the AFFIANT clearly state it was not. The AFFIANT was given a performance judgement by the DEFENDANT PARKER and LANZUAE who (1) did not even work the AFFIANT shift to monitor performance (2) and the AFFIANT was out of sick leave nine of the twelve months of the rating period. The AFFIANT filed an appeal of this rating and the MPD own APPEALS board ruled in favor of the AFFIANT and stated without reservation that DEFENDANT PARKET nor LANZAUE should have rated me. In fact the APPEALS BOARD went on to stated that if anyone should have rated me, it should have been my immediate supervisor, SGT. SHAMANEK, to which had been transferred by the DEFENDANT PARKER for reasons still unclear today.THE DEFENDANT PARKET nor LANZAUE presented no warning notices or supportive documentation indicating that the AFFIANT performance during the rating period need any type of improvement. Documentation of the APPEALS BOARD ruling is available upon request.This is a clear violation of the AMERICAN WITH DISABILITES ACT, NATIONAL REHABLITATION ACT, and the DC HUMAN RIGHTS ACT, and because of their false evaluation, it presented economic loss to me, as I would have been subject to the loss of my rank for poor performance. My prior performance was above average and in the history of my performance with MPD, it has <u>ALWAYS</u> been outstanding to above average. In 24 years this was the first time I had receive such a rating. This retailtory act by the DEFENDANT PARKER and LANZAUE clearly demonstrated their intent to deprive me of my rights and conspire in concert to do so. Similar situated detectives were treated differently.

7. The AFFIANT returned to work in DECEMBER 2005 in a limited duty capacity. Upon arrival and checking for his police equipment it was discovered that his MPD issued radio (value over $4,000), along with his name plate, key to overhead bin and a photo were missing. Upon conducting this inventory, I notified DEFENDANT BOONE, and after a few days of the equipment still missing, DEFENDANT BOONE himself advised me to take a STOLEN PROPETY REPORT. DEFENDANT BOONE was asked by AFFIANT when would a investigation begin and received no reply. This was a written request to DEFENDANT BOONE. DEFENDANT BOONE has made the statement that he will investigate what he wants to investigate. During the week ending January 20,2006,the INTERNAL AFFAIRS DIVISION had passed to DEFENDANT BOONE a list of instructions for ALL MEMBERS to access the MPD PPMS. This is a system that allows

all sworn and civilian members to look up their personnel record without traveling to headquarters, and to see if there are any active, or conclusory investigations. The AFFIANT was suppose to received this information as other detective personnel. A staff sergeant of the COMMANDINF OFFICER OF THE THIRD DISTRICT , it was ascertained that the DEFENDANT BOONE <u>should have given me the instruction sheet , so I could access the system like other detective members.</u> The AFFIANT asked the DEFENDANT BOONE why was this so and the DEFENDANT BOONE became very belligerent and told the AFFIANT that my name "just wasn't on the list". It appear to the AFFIANT that a medical determination had already been made for me, and it was felt that I was not in need or accessing information normally granted to all detectives. Similar situated detectives were treated differently/

8. The DEFENDANT thru its counsel asserts that the AFFIANT and DETECTIVE GIARADINO are two detectives who have resisted changes and are using the vehicle of a federal lawsuit to force the MPD to allow them to return to their previous unproductive work history. I challenge the DEFENDANTS to put into writing under the penalty of perjury <u>any documentation</u> of a previous poor work history, counseling or otherwise any proof of such. It is non-existent. The AFFIANT can and will show the court, letter of recommendations, numerous awards, unit citations for outstanding police work through out his police career. And the AFFIANT can show from previous supervisors ratings of outstanding to above average.

9. In the filing of the AFFIANT EEOC complaint the AFFIANT has submitted supplemental acts of retailitation by the DEFENDANTS PARKER, LANZAUAE,AND BOONE as they occurred. The EEOC has in its possession these supplemental sent to them via certified mail, return receipt. Amedments were made and sent to the federal EEOC in a timely manner as the retailtory events occurred.It was the responsibility of the federal EEOC to fully investigate each charge and subsequent charge. They were notified via certified mail and the AFFIANT can and will produce the supplemental upon request.

10. The AFFIANT in filing the initial EEOC complaint has never been approached,notified or otherwise contacted by MPD EEOC for any type of administrative remedies. Is it the AFFIANT responsibility to chase the MPD EEOC office down to seek a remedy?

11. The CHIEF OF POLICE, DEFENDANT CHARLES RAMSEY, is ultimately responsible for all the policies, activities and action of all those who work for him. Notice to the agents is notice to the principals. Notice to the principals is notice to the agents which

include, DEFENDANTS A/C ROBINSON, COMMANDER AZZALLO, A/C FITZGERALD CAPTAINS MANNING and PATRIZO along with the DEFENDANT PARKER, BOONE, and LANZAUAE. All parties acted in concert to deprive the AFFIANT of his rights and act in concert to do so.

12. DEFENDANTS thru counsel, attacked the AFFIANT through the use of false and fraudulent pleadings and misrepresentations  WITHOUT documentation to support their colorable, false and frivolous assertions.

13. THE DEFENDANTS knew or should have known that the proven false and fraudulent statements of their legal representative the OFFICE OF THE ATTORNEY GENERAL were made with malice, full knowledge and intent to represent, conceal material facts. THE DEFENDANTS knew or should have known that these gross criminal acts are a direct violation of TITLE 18 U.S.C CHAPTER 47-FRAUD AND FALSE STATEMENTS, sections 1001 and 1005.

14. It is requested that any and all parties who act against this AFFIANT on their alledge basis must produce AFFIDAVITS OF TRUTH , SWORN BY CLAIMANTS TO BE "TRUE,CORRECT AND COMPLETE (certain)" , which proves the orgin and foundation of their claims, and include providing the contract(s) or agreement(s) with the bonfide signature of this AFFIANT theron, wherein this AFFIANT has knowingly, intentionally, and voluntarily, in full legal and a lawful capacity, agree to waive or surrender his right due to a low performance evaluation.

15. THE DEFENDANTS , and all Parties who acted or proceed to act or assit in said actions, against this AFFIANT, without thorough, verifiable, point-by-point rebuttal of each and every point set forth in this AFFIDAVIT OF TRUTH, should be accountable under the approiate UNITED STATES CRIMINAL CODE TITLE 18, applicable sections, and that failure to respond as herin required, as THE COURT find a reasonable time to respond, to this AFFIANT thru counsel, will be deemed by this AFFIANT and THE COURT to invoke the doctorine of acquiescene and admission, to recover in commerce, all damages, cost and penalties.

16. THE DEFENDANTS PARKER, BOONE, LANZUAE, knowingly and willingly single out and established a vindictive disposition of retailatation and ill will towards the AFFIANT , due to his filing of an EEOC complaint, as demonstrated within a two weeks of doing so, AFFIANT days off were changed, leave tampered with, although senior management had pre-approved such, economical deprivement by giving the AFFIANT a low performance rating which was overrule by MPD own APPEALS BOARD, and all other acts of retaliation as stated within. Simliar situated persons were treated differently.

17. In order for a civil wrong to exist, three elements must exist; (1) there must be a victim (2) that the victim must have been damaged, and (3) intent must be establish on part of the accused. In this AFFIDAVIT OF TRUTH, the AFFIANT is the victim, this AFFIDAVIT verifies the damages, and the intent is establish when the DEFENDANTS fail to rebut (respond to, point for point, under the penalty of perjury), wrongs they have been party to as noted herein.

I certify under the penalties of perjury that I have read the contents and to the best of my knowledge and belief it is true, correct, and complete, the truth, the whole truth, and nothing but the truth.

_Alexander Karone Shepard_
Alexander Karone Shepard

State of _Virgina_  County of _Fairfax_  ss:

I hereby certify on this __14th__ day of __June__ 2006, the above Natural flesh and blood person: Alexander Karone Shepard, who has satisfactorily proven to me, appeared to attest and affirm that he is the person executing the foregoing document. I therefore, set forth my hand and seal in affirmation the execution thereof.

_[signature]_
Notary Public

_AlexanderKShepard_ is known to me,
or has provided _Known to me_
to confirm identity.
_[signature]_
Abel Meri
Notary Public
Commonwealth of Virginia
My Commission Expires: 10/31/2007

**ABEL MERI**
Notary Public
County of Fairfax
Commonwealth of Virginia
My Commission Expires
10-31-2007

_Alexander K Shepard_