I was appointed to the Washington, D.C. Metropolitan Police Department on October 22, 1978 and I retired on June 30, 2006. During my tenure with the department I received performance evaluations of satisfactory or higher by those charged with evaluating my performance.

I was assigned to the Third District Detectives office on June 24, 2001. I was one of the most senior detectives in the office. On or about September 19, 2004 Lt. Jeffrey Parker (black/male) took over as the commander of this unit.

Just prior to Lt. Jeffrey Parker's arrival at the Third District in September of 2004 three detectives were notified that they were to be transferred from the Third District Detectives office to other detective offices: Det. Wayne Torres (latino/male), Det. Robby Papay, (white/male), and Det. Evelyn Simmons-Newman (black/female). This transfer order was issued after Sgt. Mary Lanauze (black/female) (who was the acting Lt. at the Third District Detectives office prior to Lt. Parker's arrival) submitted their names to the Detective bureau command staff. When Lt. Parker arrived prior to the transfers becoming effective he asked Det. Robby Papay if he wanted to return to the ThirdDistrict Detectives office because the transfer was temporary. Det. Papay stated that he would like to return; however he was not afforded the opportunity to return. Det. Evelyn Simmons-Newman did return several weeks later. Det. Torres did not return to the Third District Detectives office. SIMILARLY SITUATED PERSONS OF A DIFFERENT RACE WERE NOT TREATED AS DETS. PAPAY AND TORRES WERE TREATED.

On October 20, 2004 I was working the midnight tour of duty and conducting a robbery investigation involving three civilian witnesses, police witnesses and a suspect who had been arrested for the crime. I was using the workstation that was at the time shared by Det. Samuel Mcgee (black/male) and Det. Leon Epps (black/male). Dets. Mcgee and Epps were not working at this time and I used this work station because it was the only one that allowed me full use of all of the necessary databases needed for me to satisfactorily conduct the investigation and prepare the subsequent investigative report. The investigation went beyond my midnight shift into the day shift. Det. Epps responded to work and I courteously informed him that I would be finished on the computer at his work station shortly. Det. Epps began to yell and swear at me and I asked him what was wrong. Det. Epps then stated that he would Fuck me up. Lt. Parker heard the noise and came from his office and stated: stop it. On October 21, 2004 Lt. Parker called me, Det. Epps and Sgt. Thomas Boone (white/male) into his office. He made it clear that he did not want to investigate the threats that Det. Epps had made to me. He stated that he wanted us to put the matter behind us. I was puzzled by the position being taken by Lt. Parker because during this meeting Det. Epps would not make eye contact with anyone in the Lts. office, would not sit down (as everyone else in the room had) and stood with his arms tightly crossed. He also had an angry expression on his face. I informed Lt. Parker that Det. Epps had threatened me and he replied that he could not take sides because he did not know what had happened. SIMILARLY SITUATED PERSONS OF A DIFFERENT RACE AND AGE WERE NOT TREATED AS I WAS TREATED.



/.

On November 2, 2004 Lt. Parker called an office meeting. During the meeting Lt. Parker issued a directive stating that detectives needed permission to use another detective's workstation. This was impractical because the Lt. was well aware that so many of the computers were malfunctioning. He also insinuated that I had stolen the U.S. passport from the desk of another detective. As a senior detective with a very good work history I felt very humiliated in front of the other detectives. SIMILARLY SITUATED PERSONS OF A DIFFERENT RACE AND AGE WERE NOT TREATED AS I WAS TREATED.

On January 21, 2005 I informed Lt. Parker that on the night of January 19, 2005 a female had been assaulted but was unable to be interviewed because her jaw was possibly broken and it was hard for her to communicate and therefore an investigative report had not been prepared. This offense had happened during the evening shift but I answered the radio for the assignment because I had arrived to work early and most of the office had gone home early because we were working long hours because of the presidential inauguration schedule. Lt. Parker began to address me in a hostile tone about my handling of the assignment even though I gave him a copy of the police report and a written explanation of the circumstances of the complainant's medical condition. This is how he had advised us to handle such matters at the office meeting of November 2, 2004. Since I was in compliance with his directive I asked him if there was some problem, if he was biased against me for some reason. He stated twice in an angry tone of voice that I was going to make him say something that he did not want to say. SIMILARLY SITUATED PERSONS OF A DIFERENT RACE AND AGE WERE NOT TREATED AS I WAS TREATED.

On January 25, 2005 I along with other detectives filed a complaint about offensive material that had been posted in the office from the previous shift. The material which was handwritten/drawn depicted an NFL team as mentally/physically challenged persons. This was particularly offensive since two of the detectives who filed the complaint have retarded relatives and at least two other officers at the station have children with developmental problems. This incident was reported to the Detective Bureau watch commander. When Lt. Parked came to work the following morning he did not seem to be concerned about the offensive material. He instead wanted the midnight detectives and Sgt. Greg Shamanek (white/male) to explain why he (Lt. Parker) was not notified.

On the morning of January 26, 2005 I paged Captain William Manning (white/male) and he called the office. I attempted to speak with him about the problems in the office but he cut me off and asked to speak to Det. Robert King (white/male). I was within earshot of Det. King when he was speaking with Capt. Manning about the problems and discriminatory behavior by Lt. Parker and Sgt. Lanauze that had taken place in the office since Lt. Parker's arrival. Capt. Manning then asked to speak to Lt. Parker and was on the telephone with him for at least thirty minutes.

On March 24, 2005 during the midnight shift Det. King discovered that a family photograph that was on his desk had been destroyed prior to his arrival to work. He made a report of the incident to detective supervisory personnel and the following morning Lt. Parker called a meeting to address the matter. Lt. Parker spent only a few minutes on the

matter. He had a smirk on his face when he was speaking about the matter leading some of those who were present to believe that he was not taking it seriously. It was not learned who had destroyed the photograph. Lt. Parker tried to convince Det. King that the photograph had been destroyed accidentally. The focus of the meeting quickly turned to me and why I had not handled two investigations of crimes that had occurred five minutes apart and at two different locations. I explained his to Lt. Parker and he then turned to Sgt. Shamanek whom he berated in front of all of the subordinates who were present. Sgt. Shamanek appeared to be totally humiliated after the meeting and spoke of wanting to resign from the police department. I do not recall in my career seeing a police official berating another in front of so many subordinates. SIMILARLY SITUATED PERSONS OF A DIFFERENT RACE AND AGE WERE NOT TREATED AS DET. KING, SGT. SHAMANEK AND I WERE TREATED.

On March 24, 2005 I along with detectives Alexander Shepard (black/male), Samuel Mcgee (black/male) responded to the federal EEOC and filed charges of discrimination against Lt. Jeffrey Parker, Capt. William Manning and Sgt. Mary Lanauze for age/race discrimination. My complaint concerned the failure of Lt. Parker to conduct an investigation when Det. Epps had threatened me as he is required to do. It also addressed his disparate treatment of me and Sgt. Shamanek. In addition Capt. Manning's failure to deal with these personnel problems after learning of them from Det. King was also part of my complaint. I also informed the EEOC that Sgt. Lanauze was harassing the senior detective in the office, Robert Thompson (black/male) in what I perceived as her attempt to make him retire. He did retire about five months after I had filed the complaint because of Sgt. Lanauze's harassment of him. The EEOC investigator never contacted me concerning my complaint after I was finished with the formal filing. No MPDC EEOC person ever contacted me even though the federal EEOC office informed me that my case had been referred to mediation whenever I made inquiries as to the status of my case.

It should also be noted that the federal EEOC improperly routed the EEOC complaints to the Third District administrative office instead of MPDC Police headquarters as is customary. This mishandling of the paperwork made in short order Lt. Parker and Sgt. Lanauze aware that EEOC complainants had been filed against them by members of their office.

On April 25, 2005 Lt. Parker changed the days off of Dets. Giardino and Shepard to Monday/Tuesday after they had had Sunday/Monday as their days off for many years. The schedule also listed two other detectives as having their days off changed who never actually made a change in their schedule. This was done by Lt. Parker as a ruse because further investigation revealed that they retained their original days off. In fact it is known that Det. Jeff Smith (black/male) had complained about the proposed change of his days off and Lt. Parker allowed him to have his way retain his original days off. This was a retaliatory act against Dets. Giardino and Shepard which occurred just weeks after we filed the federal EEOC complaints. SIMILARLY SITUATED PERSONS OF A DIFFERENT RACE AND AGE WERE NOT TREATED AS DET. SHEPARD AND I WERE TREATED.

On May 18, 2005 Lt. Parker returned my approved committed leave request that I had originally submitted to him on March 2, 2005. The request was for an overseas family vacation of one month which required early planning. Lt. Parker would not give me the approved leave letter or inform me of the status of my request even after I had gone to Sgt. Greg Shamanek about the matter. Sgt. Shamanek was my immediate supervisor at the time. When Lt. Parker finally returned the committed leave request to me on May 18, 2005 I saw that the command staff had approved it the same day that I had submitted it; March 2, 2005. It took Lt. Parker about two and one half months to return the approved letter to me. He also ordered me to go to the court liaison office to fill out a form which he could not name in regard to my leave time. No other person in the office was subjected to this type of harassment. SIMILARLY SITUATED PERSONS OF A DIFFERENT RACE AND AGE WERE NOT TREATED AS I WAS TREATED.

On May 18, 2005 I requested sixteen hours of annual leave for a family function on May 20, 2005 through May 21, 2005. Lt. Parker granted only one day of the two day leave request. Due to being exhausted and unable to drive to work I was forced to call the Detective bureau watch commander to secure the second day of leave that Lt. Parker had denied me. When I returned to work he called me into his office and harassed me about calling the watch commander to get the second day of leave approved. SIMILARLY SITUATED PERSONS OF A DIFFERENT RACE AND AGE WERE NOT TREATED AS I WAS TREATED,

On June 2, 2005 I received a note in my inbox from Sgt. Mary Lanauze which was attached to my closed case that I had placed in her inbox on May 28, 2005. The note stated that a refused warrant affidavit with the signature of the AUSA must be attached in order to close the case. This document and the other required reports had already been attached on May 28, 2005. When I received the memo dated June 2, 2005 Sgt. Lanauze had closed the record for the month's closure statistics in an attempt to deny me the closure. I sent a memo to the Detective Bureau command staff concerning her discriminatory and retaliatory behavior and the closure was subsequently included on the May, 2005 closure statistics. SIMILARLY SITUATED PERSONS OF A DIFFERENT RACE AND AGE WERE NOT TREATED AS I WAS TREATED.

On June 7, 2005 Sgt. Lanauze served a form P.D. 62-D on me. ( performance rating warning notice). This form indicated that I was sixty seven reports in arrears and was in danger of receiving a below average performance evaluation. The old cases dated back to October, 2004 which is the time that discrimination against me began in the office. I had problems keeping up with the work due to the hostile work environment I found myself in. I had to take leave and use the services of the Employee assistance counseling to attempt to deal with the stress that I had been experiencing. Sgt. Lanauze wrote on the document that the cases were to be completed by June 20, 2005. I was given about thirteen days to clear my backlogged cases. Det. Brian Ceasar was also served with the performance rating notice by his official Sgt. Thomas Boone at about the same time as I was served by Sgt. Lanauze. Det. Ceasar was given six weeks to clear up sixty nine backlogged cases as opposed to the thirteen days I was given to clear up sixty seven backlogged cases. It should be noted that at the time these actions were taken the office

4.

consisted of two sergeants, one lieutenant and roughly fifteen detectives. SIMILARLY SITUATED PERSONS OF A DIFFERENT RACE AND AGE WERE NOT TREATED AS I WAS TREATED.

On June 8, 2005 I filed a supplemental federal EEOC complaint in person. The complaint which was date/time stamped by the EEOC was for retaliatory acts by Lt. Parker and Sgt. Lanauze. These acts were the changing of my days off by Lt. Parker and the attempt by Sgt. Lanauze to negatively affect my case closure rate and performance evaluation.

On August 10, 2005 Dets. Samuel Mcgee and Glenn Giardino responded to the Seventh District area to recover a vehicle that was suspected of being used in a third district robbery. Det. Mcgee called Det. Grade One Jeff Smith (lead detective on the case at the time) on the radio and asked him if he wanted to interview the driver of the vehicle. Det. Smith told him to recover the vehicle and that it was not necessary to bring the driver in to the Third District to be interviewed. On August 11, 2005 the Detective Bureau command staff questioned Third District Detective officials as to why the driver was not interviewed. Statements were subsequently requested from Dets. Jeff Smith, Samuel Mcgee and I concerning our actions. A copy of Det. Smith's statement was located and it was discovered that he had lied about his directive to Det. Mcgee on August 9, 2005. I contacted Lt. Parker and Sgt. Boone to inform him that Det. Smith had given a false statement that reflected poorly on the veracity of Det. Mcgee and I if it was to be believed. Lt. Parker and Sgt. Boone refused to investigate the matter. Sgt. Boone told me that he investigates what he wants to investigate. To make matters worse Det. Mcgee received a mild form of discipline (form 62 E) from Sgt. Thomas Boone concerning this event. Dets. Mcgee and I went to the internal affairs division (IAD) with a union representative and reported the false statement of Det. Smith. IAD took no action in the matter. SIMILARY SITUATED PERSONS OF A DIFFERENT RACE AND AGE WERE NOT TREATED AS DET. MCGEE AND I WERE TREATED.

On October 26, 2005 I was served with my performance evaluation which had been prepared by my official Sgt. Lanauze. She rated me as satisfactory (meets expectations) but attached a comment sheet in which she accused me of creating a hostile work environment in the office. She further stated in the document that she did not know why I was behind in my cases which had been brought up to date by the time of this evaluation.

On October 28, 2005 Lt. Parker called me into his office and presented me with two pages of questions concerning Sgt. Lanauze's creditors. The Lt. did not give these questions to any other detective in the office. I asked him what the investigation concerned and he stated: misconduct. I attempted to get him to clarify misconduct but he would not. I asked him if I was the target of the investigation and he stated that I was the target if I did it. I told him that this was a fishing expedition and notified officer Sonia Fails, F.O.P. Shop Steward. She spoke to Lt. Parker and then told me that I did not have to answer any questions at this time. On December 6, 2005 Lt. Parker asked the male detectives in the office to prepare a statement with a single question: did you receive a call from Sgt. Lanauze's creditor? Lt. Parker informed all of the male detectives that they



5.

were not targets with the exception of me. SIMILARLY SITUATED PERSONS OF A DIFFERENT RACE AND AGE WERE NOT TREATED AS I WAS TREATED.

On November 3, 2005 during the early morning hours a crisscross assault had occurred in Mt. Pleasant involving a dog bite. The ranking police official on the scene was Sgt. Michael Smith. He made a decision to make only a dog bite incident report, electing not to address the assault because the complainants were intoxicated and uncooperative. Later that morning Lt. Parker who was in the company of Sgt. Boone called Det. Mcgee and I into his office and began to cast blame in our direction for a decision which was made by Sgt. Smith who is of a higher rank than us. Lt. Parker requested a statement from us as to why we did not prepare an investigative report. Our answer was simple: detectives do not investigate dog bites which are not crime reports. Sgt. Boone at the direction of Lt. Parker called the internal affairs division and filed a complainant against Sgt. Smith, Det. Mcgee, myself and two uniform patrol officers. Lt. David Sledge who was Sgt. Smith's supervisor at the time conducted the investigation and as a result Sgt. Smith was served with an official reprimand on January 6, 2006. Lt. Parker was not satisfied with this result and attempted to persuade Lt. Sledge to write up Det. Mcgee and I for discipline. He and Sgt. Boone also suggested to the Detective Bureau that they conduct their own investigation of us for this incident. SIMILARLY SITUATED PERSONS WERE NOT TREATED AS DET. MCGEE AND I WERE TREATED.

On December 6, 2005 I filed a second supplemental complaint to the federal EEOC by certified U.S. mail. The supplement was for further acts of discrimination and retaliation by Lt. Parker, Sgt. Lanauze and Sgt. Boone for denied leave requests, unfair performance evaluations and closer scrutinizing by these officials.

On December 6, 2005 I requested by certified mail my right to sue letter from the EEOC since it had been more than 180 days since I filed my original complainant on March 24, 2005 and no investigation or mediation attempt had been made. They responded back to me on February 6, 2006 and asked me to resubmit on the EEOC form 5 my amended charges of discrimination which I had filed previously. I complied and mailed these charges back to them February 27, 2006 and have not received my right to sue letter as of July 23, 2006.

On December 8, 2005 I was notified by Lt. Parker and Sgt. Lanauze that I was being transferred to the First District Detectives office effective December 11, 2005. I was not given a reason for the transfer and was told by my new unit commander First district detective Lt. Pamela Burkett-Jones that I was to clear my desk at the third district and to avoid going to my old office. F.O.P. shop steward Hiram Rosario spoke to Capt. Mario Patrizio of the detective bureau on December 9, 2005 and was informed that I was transferred because Det. Leon Epps had been disciplined and to transfer him along with the discipline would amount to double jeopardy. ( double discipline?). He further stated that the transfer was done on the order of Asst. Chief Winston Robinson with the concurrence of both Capt. Patrizio and Commander Anzallo. SIMILARLY SITUATED PERSONS OF A DIFFERENT RACE AND AGE WERE NOT TREATED AS I WAS TREATED.

6 -

On January 6, 2006 I filed my third supplemental EEOC complaint in person at the federal EEOC office. This form was date/time stamped by the EEOC. This supplemental addressed Lt. Parker singling me out from the rest of the office to investigate an unknown type of police misconduct concerning Sgt. Lanauze's creditors. It also addressed the internal affairs complaint filed against me and Det. Mcgee on November 3, 2005 by Sgt. Boone and the attempts to discipline us after the investigation had been closed by Lt. Sledge with the discipline of Sgt. Michael Smith. The third item addressed in the supplemental was my transfer to the First District Detectives office.

## DECLARATION

I, Glenn Giardino, the plaintiff herein, declare under the penalty of perjury, that the attached statement is true and is based upon my own knowledge and belief and I am competent to make this declaration.

_____ 8/10/06
Glenn Giardino