## ORDER OF EVENTS:

1. In DECMBER 1981, I was hired by the METROPOLITIAN POLICE department as a police officer. During the period extending from NOVEMBER 24-2004- APRIL 4,2005 which is the officail filing date, an EEOC complainant was filed with the EEOC, I was subject to a hostile work environment by DEFENDANT PARKER who continually harassed me about an alledge court appearance, when I was on <u>approved sick leave. Medical documentation advising the DEFENDANT PARKER was given to him as well as notification to my immediate supervisor, SGT. SHAMENEK.</u> DEFENDANT PARKER ignored medical documentation and continually harassed me by demanding that I write statement explaining why I did not go to court. My immediate supervisor, SGT. SHAMANEK, who was informed of my medical condition and relayed same to DEFENDANT PARKER, contacted the MPD COURT LIASION DIVISION and had me excused from coming to court. At the time of the court date and time, I was unaware of the notification from court, and only found out about it, when I returned to work in JANUARY 24,2005. I returned to work in a limited duty capacity. In contrast, my younger co-workers were not subject to this harassment when they were on approved sick leave and could not appear in court. I was further discriminated against by the DEFENDANT PARKER because of my close professional association with other detectives who are also in the protected age group. I was discriminated against based upon my age at the



PLAINTIFF'S EXHIBIT 2

time of this offense by DEFENDANT PARKER, (47), in violation of the AGE DISCRIMINATION IN EMPLOYMENT ACT, of 1967, as amended. My complaint was filed on APRIL 4, 2005 and received via certified mail, return receipt on APRIL 8, 2005 by the EEOC and accepted as charged and assigned EEOC # 100-2005-00711. Supporting documentation is readily available.

2. **WITHIN TWO WEEKS** of receiving notification that I along with two other detectives had filed an EEOC complaint, DEFENDANT PARKER begun a <u>retailtory campaign</u> by changing my schedule days off, and unjustifiably cancelled my <u>pre-approved leave.</u> I received this adverse treatment in retaliation for filing the charge of discrimination I violation of the ADEA. My leave had been submitted on March 22, 2005 and <u>was</u> approved by the COMMANDER of the SUPERTIENDENT OF DETECTIVES on April 10-2005. On April 14, 2005, DEFENDANT PARKER cancel my leave( supporting documentation available on request) which was illegal and circumvented the pre approval of the COMMANDER of the SUPERTINDENT OF DETECTIVES. This act of retaliation would have thrown my leave status into chaos as I had committed money to my trip and could not cancel. His action placed undue and unnecessary hardship on me, and the DEFENDANT PARKER had no justifiable reason to render this type of action. Undersigned had to go to the CAPTAIN and COMMANDER of the SUPERTINDENT OF DETECTIVES for redress, and

**DEFENDANT PARKER was IMMEIDATELY REVERSED. Similar situated detectives were not treated in this manner.**

3. On MAY 5,2005, I went on sick leave and subsequently was required to have two series of major surgery for a vascular disorder. Upon the completion of my surgeries, I responded to the MPD POLICE and FIRE CLINIC as required by MPD guidelines, and my medical doctors had me to submit written documentation from them that clearly stated that my surgery required a significant time for me to convelest, heal, and that due to my condition, I would be unavailable for any court and/or administrative hearings. This written documentation was from my two primary doctors, DR. BARRY SMITH on 7/12/2005 and DR. BATTIPS on 7/29/2005. DEFENDANT PARKER and the DEFENDANT LANZAUE engaged together to circumvent and render respect for my condition and advise the US ATTORNEY OFFICE, that I was available for court. On 7/26/2005, I was served a subpoena to appear in court, while I was at home attempting to recuperate from major surgery. I inform the immediate attorney that I was unable to respond. He advised that the DEFENDANT LANUZE had informed him that I could and would respond and against police policy gave him my home number. This attorney call me at home and advised that he would be serving me a subpoena. I contacted direct, in writing, the UNITED STATES ATTORNEY for the DISTRICT of COLUMBIA, KENNETH WEINSTEIN, who halted my response to



come to court due to the severity of my medical condition. In fact, DEFENDANT LANAUZE had visit my personal residence prior and saw my limited walking liability herself. Written documentation was submitted to him as was the same documentation that was submitted to the attention of DEFENDANT PARKER and DEFENDANT LANAUZE. Both DEFENDANT PARKER and LANUAZE besides the moral decency issues, attempted to make a medical determination for me, thereby practing medicine without a license. This was in further retaliation for filing my original EEOC complainant. The EEOC was notified and a supplement was sent to them on 6/20/2005 regarding the attempted leave situation initiated by DEFENDANT PARKER, and on 8/18/2005 another supplement was sent to them on the court situation as describe above. Both supplements was sent via certified mail, returned receipt and all documents are readily available. This is clearly a violation of the AMERCIAN WITH DISABLITY ACT and the DC HUMAN RIGHTS ACT. [NATIONAL REHAB ACT]

4. On 11-15-2005, DEFENDANT LANAZUE responded to the undersigned personal residence and served him with an MPD PERFORMANCE EVALUATION covering the period of OCTOBER 2004- OCTOBER 2005. The rating receive was BELOW AVERAGE. This was a blatant reailtory move by the DEFENDANT PARKER and DEFENDANT LANZAUSE has they both signed off on this evaluation. The evaluation was unfair due to my being on sick leave/limited duty from 11/04- FEB 05. I was on sick leave during this period until I was

placed on limited duty in FEB 05 and returned to active duty in MARCH 2005. I was out again on sick leave from May 5, 2005- DECEMBER 14, 2005. This includes the rating period from OCT 2004- OCTOBER 2005. There is no MPD guidelines on how to rate a member on sick leave and/or limited duty. On 11-29-2005, I made a written appeal of my rating as given by the DEFENDANTS PARKER and LANAZUE. In my appeal, I clearly demonstrated that DEFENDANT PARKER, and especially DEFENDANT LANZUAE could not rate me, for they, and especially she, never work my tour of duty, which was midnights and there had been no prior written documentation concerning any deficiency in my work. As a matter of record in the 24 years I have been a member of the MPD, my performance rating has been OUTSTANDING to ABOVE AVERAGE, and this was the <u>first time</u> in my career I had receive such a low rating. As a matter of record, the MPD DETECTIVE PERFORMANCE APPEAL PANEL ruled in my favor on MARCH 10.2006 and concluded that there was justification for DEFENDANT LANZAUE rating me and that there was no warning notices or supportive documents presented to justify the performance rating I received. This rating that was given by DEFENDANT LANZUAE and PARKER would have economically deprived me of future advancement as the rating is a crucial element when one applies for advancement or promotion. This act by the defendants was an act of retaliation and economic deprivement. Similar situated persons who were on sick leave/limited duty were treated diffferntly. On DECEMBER



2,2005, via certified mail, returned receipt, the EEOC was sent a supplemental on the actions as indicated above with the exception of the board of appeals findings. The DEFENDANT PARKER and LANUAZE violated the AMERICAN WITH DISABILITES ACT, NATIONAL REHABILITATION ACT, DC HUMAN RIGHTS ACT, and my original charge of discrimation, the ADA. Similar situated detectives were not treated in this manner like this AT ALL!!!!

5. I returned to work on DECEMBER 14, 2005. Upon my return to work, in a limited duty capacity, as any good and competent police person would do, I check to make sure the contents of my desk were intact and available. Upon inventory of my desk, I discovered that missing from my locked overhead bin was my MPD issued radio, (value over $4 K), along with my name plate, and the key to my overhead bin from my in drawer and a self portrait. Upon completion of the aft formetion items, I notified DEFENDANT BOONE, and after a few days of searching with no results and office notifications, DEFENDANT BOONE advised me to take a report. An official police report was taken and DEFENDANT PARKER and LANAUZAUE were notified, along with the new sergeant DeVILA. DEFENDANT BOONE was ask verbally and thru written communication (available on request) when an investigation would begin. No reply has ever been received by DEFENDANT BOONE, who was in charge of this investigation.



During the week of January 20, 2006, MPD INTERNAL AFFAIRS DIVISION had passed DEFENDANT BOONE a list of instructions for ALL MEMBERS to access the new MPD PPMS. This is a system that allows all sworn and civilian members to look up their personnel record without traveling to police headquarters, and to see if there is any active or conclustory investigations going on. This member was supposed to receive this information as other detectives in my office had received it. When I found out that this information was available to me and was not given to me, I asked the DEFENDANT BOONE as to why I had not received this information like other members had. DEFENDANT BOONE became very belligerent and told me that "my name just wasn't on the list". I am on the MPD roll call and time and attendance records, but not on the list???,,,,, It was obvious that the DEFENDANT BOONE had made a medial determination for me and my need to access this information was not necessary. Similar situated persons were treated differently in both situations. DEFENDANT BOONE made a medical determination for me and <u>failed to take police action in the course of a criminal investigation.</u>

6. The MPD has in place mandatory training mandated by the DEPARTMENT OF JUSTICE for all of its detectives. During the course of the month of JANAUARY 2006, two written directives were given that ALL DETECTIVES complete the mandatory 40hour training. DEFENDANT PARKER as the unit commander did not allow me to attend this mandatory training, but did allow another detective who was in a limited duty capacity like I


was to attend. DEFENDANT PARKER made a medical determination for me, and further violated the AMERICAN WITH DISABILITY ACT, NATIONAL REHAB ACT, DC HUMAN RIGHTS ACT and the original charge of ADA with this retailtory act. Further his act has damage me economically as when I go for advancement or apply for any position on the MPD, without having a record of completion, I am not eligible to apply. DEFENDANT PARKER has further economically deprieve me of advancement in any capacity. Similar situated person were not treated in this manner.

The aft formation act by the DEFENDANTS PARKER, LANAUZE and BOONE clearly demonstrate clear and convincely acts of age discrimination, economic deprievement based upon retaliation, violation of the AMERICAN WITH DISABILTY ACT, NATIONAL REHAB ACT and the DC HUMAN RIGHTS ACT as similar situated persons were treated differently. These acts of retaliation are documented and all supplement were sent to the EEOC with return receipt by this respondent.

7. On MAY 18, 2006, despite doctors orders of home confinement, the undersigned responded to the DC RETIRMENT board for the alledge consideration for disability retirement. At this hearing, I read a prepared statement written by me which stated that the MPD were trying to put me on the fast track to retirement due to my filing a discrimination lawsuit ( filed MARCH 2006) against them. In my statement I testified under oath that there were others who had been out on



sick leave/limited duty <u>for several years</u> and MPD and the board had not even considered them. I gave specific situations <u>which are undisputable</u>. Further it was shown that misapplication of the law was being utilized as the DC DISABILITY ACT of 2004 clearly stated that a member would not, could not be considered for disability retirement until <u>172 days OVER A TWO YEAR PERIOD.</u> I only have been out over a 172 day period WITHIN A ONE YEAR PERIOD. It was further placed into evidence by the MPD own doctor that the MPD knew in 1995 that I was a diabetic but did not tell me or give me any medial advise. For six years this disease grew within my body without treatment and I did not find out that I was diabetic until 2001. When the effects of this non notification hit me in 2005, it was the underline reason why it hit me so hard. Similar situated person were not and have not been treated in this manner. The DC RETIREMENT BOARD was warned that they could become co-defendants in this lawsuite in a conspiracy manner after being warned accordingly. My attorney of record sent a letter to the CHAIRPERSON,ALMA HICKS advising that the board should based soley on the testimony of the MPD own doctor retire me 100% per cent. MS.HICKS rejected the clear and only choice available and stated that it would be taken under consideration. It is felt that the MPD is using the DC BOARD as a willing co-conspirator to economically deprieve the respondent of full benefits and a medical determination has been made that the respondent will not only never return to duty, but cannot work in a capacity of

his former job as a detective, but yet has been assigned to work in an alledge administravtive position at police headquarters where he does next to nothing. Only as of JULY 19, 2006 has the respondent been given any type of training to assist in his detail postion to police headquarters and that is still on a limted basics. Similar situated person were and are treated differently.

8. CAPTAIN WILLIAM MANNING, who was the supervisor and captain In charge of MPD detectives at the time the hostile work environment began should be included in this lawsuit due to his full knowledge of what was going on in the office at the THIRD DISTRICT, my duty station then. CAPTAIN MANNIG was specially told of what was going on by DET. ROBERT KING, and took no action. COMMANDER ANZALLO was informed by CAPTAIN MANNIG and both took no action at all to relieve the hostile environment and subsequent retailtory acts by DEFENDANT PARKER, LANAUZE and BOONE. Specifically despite over ruling DEFENDANT PARKER when he attempted to deprieve me of my committed approve leave, DEFENDANT MANNIG and ANZALLO knew or shall have known that the act of tampering with an official document, leave book,(which DEFENDANT PARKER change,copies available as evidence) and the DEFENDANT PARKER and LANAZUE subsequent retailtory acts were in re action to my filing an EEO complaint.

9. CAPTAIN PATRIZO should be included because prior to the retirement of CAPTAIN MANNING, he



was official advise of the circumstances of the EEO complaint and did nothing to vanquish a hostile and retailtory enviorment.

10. A/C/ ROBINSON, EXECUTIVE A/C FITZGERALD, and CHIEF CHARLES RASMEY were all made aware of the EEO complaint and did not issue ANY directives to resolve the valid complaints nor instruct the MPD own department to intercede for a resolution. As a matter of record, specifically CAPT PRITIZO, CMDR ANZALLO, A./C CHIEF ROBINSON AND EXECUTIVE CHIEF FITZGERALAD were aware of the retailtory act by DEFENDANT PARKER and LANZUAE concerning my performance evaluation as my written appeal was sent thru the chain of command with each police official notified and all receive the findings of the police detective board showing clearly that DEFENDANT PARKER and LANZUAE were definitely incorrect in giving me a low rating. This is evident by the documents in my possession, namely my appeal to the above persons and the written findings of the police detective board.

11. The CHIEF OF POLICE, CHARLES RASMEY was notified in the beginning of my filing of an EEOC complaint and did nothing to issue any directive to his subornatives to resolve the matter. The EXECUTIVE A/C FITZGERALD who is responsible for keeping the CHIEF OF POLICE abreast of matters of this nature, knew and shall have known of the retailtory acts by DEFENDANTS. The MPD EEOC office made and is mandate by its



# DECLARATION

I, Alexander Shepard,, the plaintiff herein, declare under the penalty of perjury, that the attached statement is true and is based upon my own knowledge and belief and I am competent to make this declaration.

_____
Alexander Shepard

# Organizational Chart: Metropolitan Police Department (MPD)

**Chief of Police** reports to/oversees:
- Agency Chief Financial Officer
  - Office of the Chief Information Officer
- Office of Corporate Communications
  - Public Information Unit
  - Office of General Counsel
    - Labor and Employee Relations Unit
- Office of Unified Communications
  - Office of Police Communications
    - Corporate Support Group
      - Office of Contracting and Procurement
      - Office of Human Services
        - Institute of Police Science
          - Academic Services Section
          - Firearms and Civil Disturbance Training Section
          - In-service and Continuing Education Section
          - Legal Training and Review Unit
          - Media Productions Section
          - Operational Services Section
          - Recruit Training Section
          - Specialized Training Section
        - General Support Services Division
          - Equipment & Supply Branch
          - Evidence Control Branch
          - Facilities Branch
          - Fleet Services Branch
          - Reproduction Branch
      - Office of Contracts and Support
        - Police Business Services Division
          - Central Cellblock Branch
          - Fingerprint Analysis Branch
          - Records Branch
          - Security Officers Management Branch
- Field and Tactical Support Division
  - Executive Protection Unit
  - Regional Operations Command North
    - Second District
    - Third District
      - 3D Substation
      - Gay and Lesbian Liaison Unit
      - Latino Liaison Unit
    - Fourth District
  - Regional Operations Command Central
    - First District
      - 1D Substation
      - Asian Liaison Unit
      - Deaf and Hard of Hearing Liaison Unit
    - Fifth District
  - Regional Operations Command East
    - Sixth District
      - 6D Substation
    - Seventh District
- Operational Services Group
  - Synchronized Operations Command Center
  - Operational Support Command
    - Court Liaison Division
    - Forensic Science Division
    - Narcotics and Special Investigation Division
    - Reserve Corps Division
    - Special Operations Division
    - Superintendent of Detectives Division
- Office of Professional Responsibility
- Office of Security Services
- Office of Organizational Development
- Office of the Chief Administrative Officer
  - Chief of Police Support Unit
  - Intergovernmental Relations Division

Plaintiff's Exhibit 3

GO-OMA-101.10
[Organizational Structure of the Metropolitan Police Department (MPD)]
Appendix A: Metropolitan Police Department Organization
(rev. 08/25/05)

*Handwritten annotations:*
- Robert Williams → Chief of Police
- Executive Assistant Chief Michael Fitzgerald
- Assistant Chief Winston Robinson
- Commander Arcello → Capt. Mahaffey, Lt. Parker, Sgt. Lanauze, Sgt. Boone

[Organizational structure of the Metropolitan Police Department (MPD)]
Appendix B: Office of the Chief of Police
(rev. 08/25/05)

GO-OMA-101.10

# Office of the Chief of Police

- **Agency Chief Financial Officer** (dashed line)
- **Office of the Chief of Police**
  - **Office of the Chief Information Officer**
    - Systems Integration Division
    - IT Operations Division
    - Server and Project Management Section
    - Customer Relationship Management Section
  - **Office of Corporate Communications**
    - Public Information Unit
  - **Office of General Counsel**
    - Labor and Employee Relations Unit
    - Freedom of Information Act (FOIA) Unit
  - **Office of Professional Responsibility**
    - Disciplinary Review Division
      - Disciplinary Investigations Review Unit
      - Office of Police Complaints Liaison Unit
    - Internal Affairs Division — *[handwritten: Inspector Matthew Klein]*
      - Police Misconduct Section
      - Civil Rights and Force Investigation Section
      - Operations Section
      - Diversity and EEO Compliance Unit
      - Quality Assurance Unit
    - *[handwritten note: COURT LIAISON DIV.]*
  - **Office of Security Services**
    - School Safety Division
    - ~~Youth Violence Section~~ *[crossed out]*
    - Cadet Training Unit
    - *[handwritten: RESERVE CORPS]*
  - **Office of Organizational Development**
    - Policy and Program Development Division
      - Risk Management/Accreditation Unit
      - Directives Development Unit
      - Program Development Unit
      - Victim Services Unit
    - Research and Resource Development Division
      - Grants Unit
      - Research and Analysis Unit
    - Policing for Prevention Division
      - Community Outreach Unit
      - Partnership Development Unit
      - Police Service Area Support Unit
  - **Office of the Chief Administrative Officer** — *[handwritten: Assistant Chief William Ponton]*
    - Intergovernmental Relations Division
    - Police Officer Standards and Training Unit
    - Strategic Planning Unit
    - Chief of Police Support Unit



GO-OMA-101.10
[Organizational Structure of the Metropolitan Police Department (MPD)]
Appendix C: Corporate Support Group
(rev. 0825/05)

Case 1:06-cv-00469-JMF    Document 13-3    Filed 08/11/2006    Page 16 of 16

